In the Matter of the Estate of ARNOLD ROTHSTEIN, Deceased.*

Surrogate's Court, New York County, January 10, 1929.

*I. Gainsburg*, for the contestants Abraham E. Rothstein, Essie Rothstein, Edgar Rothstein, Edith Lustig, Jack Rothstein.

*Hartman, Sheridan & Tekusky*, for Maurice Cantor and William Wellmann.

*Abraham H. Brown*, for Samuel Brown.

*Abraham Smolens*, for contestant Caroline Rothstein.

*Nathan Burkan*, for temporary administrators.

O'BRIEN, S. Three applications have been made by Maurice F. Cantor, as follows:

(1) That the determination be made that Maurice F. Cantor is not a " subscribing witness " of testator's will; (2) that the order of this court requiring the examination of Maurice F. Cantor as a " subscribing witness " be vacated, and (3) that paragraphs 6th, 7th and 8th of the contestants' objections to the probate of testator's will be stricken from said objections.

These applications are disposed of as follows:

(1) On the 9th page of testator's will Maurice F. Cantor's name appears in handwriting on the lower left-hand side placed closely to a cross on the right-hand side which had been penned on the paper with the word " His " above the cross, and the word " Mark " below it. On the 10th and last page of said paper there are penned two names of witnesses, viz., E. F. Love, residing at Hotel Grenoble,

---

* See, also, *Matter of Rothstein*, 133 Misc. 598.

New York city, and M. E. Goerdel, residing at 60 West Ninety-second street, New York city. These two signatures are placed after the attestation clause, which reads as follows: "Signed, sealed, published and declared by the said testator as and for his last will and testament, in the presence of us and each of us, who in his presence and in the presence of each other at his request, have hereunto subscribed our names as witnesses thereof of the day and year last above mentioned."

I find that Maurice F. Cantor is not a "subscribing witness" of testator's will. This determination is based upon the following considerations: (a) The term "subscribing witness" has a clear and certain meaning as to which all the authorities are in agreement.

Thus, Words and Phrases Judicially Defined (Vol. 7, p. 6733) defines the term as follows: "A 'subscribing witness' is one who was present when the instrument was executed, and who at the time, at the request or with the assent of the party, subscribed his name to it as a witness of the execution."

Bouvier's Law Dictionary (3d Rev.) gives the definition as follows: "One who subscribes his name to a writing in order to be able at a future time to prove its due execution. An attesting witness. In order to make a good subscribing witness, it is requisite that he should sign his name to the instrument himself, at the time of its execution, and at the request or with the assent of the party; Hollenback v. Fleming, 6 Hill (N. Y.) 303; 11 M. & W. 168;* Mullen v. McKelvy, 5 Watts (Pa.) 399. * * * If the subscribing witness is out of the jurisdiction, and no person can be found within the jurisdiction who can prove his handwriting, the handwriting of the obligor may be proved."

Greenleaf on Evidence (16th ed.), page 709, defines the term as follows: "A subscribing [or attesting] witness is one who was present when the instrument was executed, and who, at that time, at the request or with the assent of the party, subscribed his name to it as a witness of the execution."

And Twyeffort's New York Estates and Surrogates (Vol. 1 [2d ed.], p. 803) defines the expression as follows: "A subscribing witness to a will or codicil is one who signed it at the testator's request for the purpose of testifying after the latter's death to its due execution and the testator's competency and freedom from restraint at the time of such execution."

Section 21 of the Decedent Estate Law reads as follows:

"§ 21. Manner of execution of will. Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner:

---

* *Cussons* v. *Skinner* (11 M. & W. 161, 168).— [REP.

" 1. It shall be subscribed by the testator at the end of the will.

" 2. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made, to each of the attesting witnesses.

" 3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament.

" 4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator."

(b) Maurice F. Cantor, the attorney who drew the will and supervised its execution, declares that he was not a " subscribing witness," and that his name was penned by him on the paper offered for probate " only as a witness to the mark made by the deceased on the will offered for probate herein."   (c) The testimony of E. M. Love, one of the subscribing witnesses, shows that he was not a " subscribing witness."   Her testimony in part is as follows: " By Mr. Madigan:  Q. Did Mr. Cantor say this was the last will and testament of Arnold Rothstein when he asked you to sign it?   A. He told the patient, this is you will, Arnold, this is your will, you know this is your will.   Q. Was the patient's eyes open at the time?   A. No.   Q. What did Mr. Rothstein do at the time, if anything?   A. Mr. Cantor kept telling him, Arnold you know this is your will, this is the will that you spoke about this morning, and so after he explained it over and over again to Mr. Rothstein, Mr. Rothstein said in a very weak voice, Will.   Q. Were you present all during this time?'   A. All the time.   Q. Was Miss Gueidel there during this time?   A. All the time.   Q. Did Mr. Cantor introduce you to Mr. Rothstein?   A. He would hardly introduce me when I was the nurse on the case.   Q. Did he say that these women are here for any purpose?   A. No.   Q. Did he say anything else there at that time with reference to the execution of the will, Mr. Cantor at that time to you?   A. He said, This is your will, Arnold, I made it just as you told me this morning.   I was just a little late in getting in, but it is just as you told me this morning, but he didn't open the will or read the will.   Q. Did he have the will in his hand at the time?   A. Mr. Cantor?   Q. Yes.   A. Yes.   Q. Did he lay it on the lap of Mr. Rothstein?   A. No.   He put on the stand just the space to make the mark; that is the only part of the will we saw. Q. And you say after that Mr. Rothstein repeated the word Will? A. He said Will.   Q. Then was it that you signed, or how long after, as a witness?   A. Just after that.   Q. When he said Will, did

he nod his head or do any overt act? A. No, he just said in a weak voice, Will. Q. Did he have his eyes open then? A. He opened his eyes a little, but he slept most of the time he was there. Q. Did he look at you? A. No. Q. Did Mr. Cantor say anything else at that time with reference to the will, that you can remember? A. He just explained that that was the will; he drew it up the way he wanted it done. Q. Did he say it out loud? A. Yes. Q. In the presence of the deceased? A. Yes. He said, This is your will, Arnold; this is the will; I made it just the way you wanted it this morning. Q. And then he took his hand as you describe and wiggled it; he pushed the pen and made an X? A. Yes. Q. Did Mr. Cantor say anything after that? A. I don't think he said anything. He wrote down Mark and Arnold Rothstein's name. Q. Did he say anything else with reference to you? A. He told us not to tell what went on in the room. Q. I mean with reference to the execution of the will; did he say anything else in the presence of Mr. Rothstein? A. No I don't think he did. Q. You have a good memory, have you? A. I am supposed to have. Q. Do you remember exactly everything that took place that day? A. I think I do. Q. A little excitement at the time, wasn't there? A. No, it was very quiet. There was no other person in the room, except the other nurse, Mr. Cantor and myself. Q. And doctors around at that time? A. Not in the room. *Q. Did Mr. Cantor ask you to sign the will in the presence of the deceased? A. He asked me to sign the will. Q. Did he say it out loud? A. He said, I want you girls to witness the will.* Q. That was in the presence of the deceased? A. Yes, but Mr. Rothstein never paid any attention to it. Mr. Madigan: Objected to, and move to strike out the latter part. *Q. I ask you to answer the question. Did Mr. Cantor say I want you — What did he call you? A. He said, I want you two girls to witness this will.* Q. That was in the presence of the deceased? A. Yes. Q. At the bedside of the deceased? A. Yes. Q. How near to the deceased was he when he said that? A. Right near to the side. There is a little stand in the room and he was sitting at the stand and the patient was in bed. Q. Right next to him? A. A couple of feet away I suppose. Q. And where were you standing? A. At the stand, between the bed and the stand. Q. And was Miss Gueidel next to you? A. She was right there. *Q. He said, I want you two girls to be witnesses to this will. Are those the words Mr. Cantor used? A. Yes. Q. And was it then that he took the hand of the deceased and made this mark that you claim? A. Yes.* * * * *Q. By the way, did Mr. Cantor put his name on this paper and write the words, witness to mark, Maurice F. Cantor, did he do it of his own volition or did you ask him to do it? A. Miss Gueidel asked*

*him.  Q. In your presence?  A. Yes.*  Mr. Madigan: Objected to.
*Q. What did Miss Gueidel say to Mr. Cantor before he wrote his name?
A. She said, how do I know who you are, and he said I will give you
my card, and I will write my name down here and I will give you my
card, and he gave us one card each, I think Miss Gueidel first.*  Q. And
did he *then* write his name?  A. Yes he wrote his name.  *Q. Did
he write his name and was this conversation before or after he wrote
the name or the words Arnold Rothstein?  A. He wrote his name after
Miss Gueidel had said that.  Q. When did Miss Gueidel ask him
and say to him, how do we know who you are: was it before or after
he had asked you to sign this paper as witnesses?*  Mr. Madigan:
Objected to.  *A. After.  Q. And did he write his name before or
after you had signed your name to this paper?  A. I think he wrote
the name, I would not say positively, but I think he wrote it before we
signed the name.  Q. And of course he did that after Miss Gueidel
had spoken to him about it?  A. Yes.  Q.* Now then·how long did
he remain in the room after you and he and Miss Gueidel signed,
saying you would sign anything in order to get him out of the room?
A. Three or four minutes I should say."

(d) Maurice F. Cantor has not been presented by the proponents
as a witness in this proceeding.  On the other hand, there are two
witnesses who are " subscribing witnesses," as this term is generally
defined and who have been presented by the proponents as such.
(*Matter of Sizer*, 129 App. Div. 7, 8.)

(2) For the reason that I have determined that Maurice F. Cantor
was not a " subscribing witness," the order dated November 19,
1928, providing for the examination of him as a " subscribing wit-
ness " will be vacated.

(3) The application to strike paragraphs 6th, 7th and 8th from
the objections filed by the contestants is granted as to items 6th,
and 7th and denied as to item 8th.  The statements made in said
paragraphs 6th and 7th are (1) not essential to raise the issues, which
are the purpose of the contestants; the paragraphs remaining being
sufficient for said purpose, and (2) they are simply descriptive and
evidentiary.

The motion to amend the order framing issues by striking out the
words " of at least two " in referring to the alleged execution and
subscription by the witnesses to the will, is granted.  Submit
separate orders on notice in accordance with this decision.